UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARILYN EGGERS,

    Plaintiff,

v.                                                         Case No. 04-73860

MARCIA MOORE, VERNA ANIBLE,       HONORABLE AVERN COHN
RAYMOND BIHUN, SHARON HILL,
JIM RYAN, and PLYMOUTH-CANTON
SCHOOL DISTRICT,

    Defendant.

_____/

## MEMORANDUM AND ORDER
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## AND
## DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT

I.  Introduction

This is an employment case. Plaintiff Marilyn Eggers (Eggers) is suing defendants, Marcia Moore, Verna Anible, Raymond Bihun, Sharon Hill, Jim Ryan, and Plymouth-Canton School District[1] claiming (1) breach of contract, (2) intentional infliction of emotional distress, and (3) violation of procedural due process.

Before the Court is defendants' motion for summary judgment on all of Eggers' claims and Eggers' motion to amend her complaint to add a claim based on her Fifth Amendment right to be free from self incrimination. For the reasons that follow, defendants' motion will be granted and Eggers' motion will be denied.

---

[1] Eggers also sued Robert Hayes and Ken Wolcott, who were subsequently dismissed.

II. Background

The material facts as gleaned from the parties' papers follow.[2]

Eggers was first employed by the Plymouth-Canton School District (the school district) in the Fall of 1986 as a elementary teacher. She was employed without incident until 1993.

Eggers was first off work in March 1993 through the remainder of the 1993-1994 and 1994-1995 school years for medical reasons. In March of 1999, she began to treat with a psychiatrist, Dr. Day, and was again off work during the 1999-2000 and 2000-2001 school years for medical reasons.

Eggers returned to elementary teaching the in Fall of 2001 and was assigned as a third grade teacher at a new elementary school, Allen Elementary. The principal at Allen Elementary was defendant Marcia Moore (Moore). Defendant Jim Ryan (Ryan) was the Deputy Superintendent of the Plymouth-Canton School District. Defendant Verna Anible (Anible) was the Executive Director of Educations Services. Defendant Sharon Hill (Hill) was Director of Elementary Education. Defendant Ryan Bihun (Bihun) was the Human Resource Director.

During Eggers first semester at Allen Elementary, Moore received complaints from parents regarding Eggers' demeanor with students in the classroom. Eventually, Moore removed five students from Eggers' classroom. The record does not contain the specifics as to why the students were removed. Eggers testified at deposition that she

---

[2]Neither party followed the Court's motion practice guidelines for a motion for summary judgment. Defendants did not file a statement of material facts not in dispute, nor did Eggers file a counter-statement of disputed facts in the required form. Most notably, neither party highlighted their exhibits.

was not aware why the students were removed and that she did not have an opportunity to speak with their parents prior to the students' removal.

Eggers apparently had a meeting with Moore on November 29, 2001 to discuss Moore's concerns regarding Eggers' classroom. The outcome of the meeting is not clear.

On November 29, 2001, Moore wrote to Eggers in which she stated that another parent called her with concerns. The letter states in part:

> After discussing these concerns with Jim Ryan, Deputy Superintendent, Verna Anible, Executive Director of Educational Services, Sharon Hill, Director of Elementary Instruction, and Bob Hayes, Director of Student Services, we will begin an out-of-sequence evaluation which is addressed in Section 8B2 of the PCEA contract. We intent to follow all of the requirements of the PCEA evaluation instrument and need your continued involvement in this process. We will discuss the formal observation schedule so that we are in compliance with the negotiated agreement. The process will begin in 60 days, on January 29, 2002.
> I have listed areas in the Teacher Evaluation report form that have been identified as needing improvement. I want this to be a collaborative process and need you to identify what activities will produce the necessary evidence of improvement in each area. ...

Moore identified 23 areas of improvement. Eggers says that she had previously received excellent evaluations in 14-15 of the 23 areas in the past.

Eggers was upset by the out-of-sequence evaluation. Eggers, was however, due for a standard evaluation during the 2001-2002 school year. That evaluation was postponed due to the decision to conduct an out-of-sequence evaluation.

On February 8, 2002, Eggers meet with Moore and a union representative to discuss the out-of-sequence evaluation. Eggers meet again with Moore on February 26, 2002. It is not clear from the papers what transpired at these meetings.

Following the announcement of the out-of-sequence evaluation, other students

had incidents with Eggers which resulted in their removal from Eggers' classroom. According to defendants' papers, Ryan Brown was removed. After the removal, Brown's mother talked to Eggers about missing money for Ryan's yearbook, to which Eggers' allegedly replied, "after everything you have done to me this year, I don't owe you any favors." On August 29, 2002, Eggers had an incident with Jacob Fountain, a student, regarding his daily assignment journal. The incident ended with Eggers tilting the contents of his desk and Jacob crying. On September 3, 2002, Eggers had an incident with Kaiia Gavals, another student. Apparently, Eggers learned that Kaiia was the source who the information regarding Jacob Fountain which was reported to Jacob's mother. Eggers confronted Kaiia and told her that she was disappointed in her and that "you and I have a relationship problem." There was also an incident (the time of which is not clear from the papers) regarding student Alexandra Poma. Eggers says the incident involved the student continuing to play with a marker after being told not to; the student cried as a result of the incident.

Meanwhile, in April 2002, Moore performed two classroom observations of Eggers. Eggers attended a meeting on June 14, 2002 at which time Moore's observations were discussed. Eggers had a second meeting on June 28, 2002, with Moore and Anible as well as Eggers' attorney. At all of these meetings, Moore had a least one union representative.

On September 5, 2002, Eggers was given a note from Moore which states in part:

> I am directing you to meet with me in my office immediately after the staff meeting today to discuss the incidents that occurred in your classroom on August 29th and September 3rd.

4

Eggers had union representation at this meeting. Eggers believed that she was being accused of threatening a student and refused to answer any questions and asked for her attorney to be present. She also asked that the meeting be postponed, which was refused. She was instead advised that if she did not answer questions, she would be placed on administrative leave. Eggers declined and was placed on administrative leave. Although the administrative leave was paid, Eggers said that she was not informed at that time that it would be paid.

Eggers was again asked to attend a meeting to discuss the incidents. Eggers' husband advised defendants that she could not attend any such meeting and was seeking treatment with a psychologist. Indeed, Eggers did not participate in any investigation or discussion with defendants after September 5, 2002.

At some point, Bihun advised Eggers that her paid administrative leave was being changed to personal leave as a result of her inability to participate in an investigation because of medical reasons.

Eggers did not return to teaching for the remainder of the 2001-2002 school year. She also did not return to teaching in the 2002-2003, 2003-2004, 2004-2005, 2005-2006 school years on advice of her doctor. Each year, the school district has granted Eggers extensions of her medical leave. She remains on medical leave to date. As stated at the hearing, Eggers' medical leave is unpaid as she exhausted the time for paid medical leave.

At no time did Eggers file a grievance over any of the defendants' actions.

### III. Defendants' Motion for Summary Judgment

#### A. Legal Standard

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion.  See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50.  Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings.  Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52).  The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum

Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995).  Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact.  See Anderson, 477 U.S. at 255.  Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted.  Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

### B.  Eggers' Breach of Contract Claim

Defendants say that they are entitled to summary judgment on this claim because Eggers did not exhaust her administrative remedies.  Eggers suggests that exhaustion would have been futile because a union representative, referred to as Portelli, advised her that she would not win.  She also says that there is a question of fact as to whether she was required to file a grievance.

Defendants' position is well taken.  The Plymouth-Canton Education Association (the union) is the exclusive bargaining representative for teachers in the Plymouth-Canton School District.  Eggers is a member of the union and the terms and conditions of her employment are governed by a collective bargaining agreement (CBA) between the union and the school district.  The CBA contains a grievance procedure by which disputes are to be resolved which provides for arbitration.

It is undisputed that Eggers never filed any grievances regarding any actions taken by defendants.  Eggers suggests that filing a grievance would have been futile as she says a union representative indicated it would not be successful.  Putting aside whether Eggers' failure to exhaust her remedies under the CBA precludes her breach of contract claim, it is clear that in order to bring a breach of contract claim based on the CBA, she would also have to prove a breach of the union's duty of fair representation.

Knoke v. East Jackson Public School District, 201 Mich. App. 480, 486 (citing Saginaw v. Chwala, 170 Mich. App. 459, 464-465 (1988); Pearl v. Detroit, 126 Mich. App. 228, 238-239 (1983)). Because Eggers never filed a grievance, she cannot show that the union breached its duty of fair representation. Her vague assertions that the union would not pursue the grievance are insufficient. Defendants are entitled to summary judgment on Eggers' breach of contract claim.

C. Eggers' Intentional Infliction of Emotional Distress Claim

Defendants argue that Eggers' claim for intentional infliction of emotional distress fails as a matter of law because her allegations of emotional distress do not rise to the level of extreme or outrageous conduct. Eggers disagrees and says that there is a genuine issue of material fact as to whether defendants' actions constitute intentional infliction of emotional distress.

To sustain an intentional infliction claim, Eggers must prove that defendants intended to inflict emotional distress and that the conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. Roberts v. Auto-Owners Ins. Co, 422 Mich. 594, 602-08 (1985). The Michigan Supreme Court has stated:

> The test for the severity of the conduct is whether the recitation of the facts to an average member of the community would arouse his or her resentment against the defendant and lead him or her to exclaim, "Outrageous!" It is not enough for the plaintiff to prove that a defendant acted with intent that is criminal, that a defendant intended to inflict emotional distress or that the conduct has been characterized by malice or a degree of aggravation that would entitle the plaintiff to damages under another theory of liability. Mere insults, indignities, threats, annoyances, petty oppressions, or other

> trivialities are insufficient. The plaintiff must necessarily be expected and required to be hardened to a certain amount of rough language and to occasional acts that are definitely inconsiderate and unkind. The law does not intervene in every case where someone's feelings are hurt.

See also Graham v Ford, 237 Mich App 670, 674 (1999).

Eggers' claim is based on Moore's decision to conduct an out-of-sequence evaluation. Not only are such evaluations permitted by the CBA, Moore's decision cannot be said to constitute extreme and outrageous conduct. See Sankar v. Detroit Board of Education, 160 Mich. App. 470 (1987) (dismissing a plaintiff/teacher's intentional infliction of emotional distress claim based solely on allegations that defendants undertook to evaluate her classroom performance, doing it in a negligent fashion with the specific intent of getting her to leave). While Eggers may have been distressed by the decision to conduct an out-of-sequence evaluation, and may disagree with Moore's noted areas of deficiencies in her performance, these facts simply do not make out an intentional infliction of emotional distress claim sufficient to survive summary judgment. Accordingly, this claim must be dismissed.

### D.  Eggers' Due Process Violation Claim

Defendants argue that this claim fails because Eggers had no due process right to a hearing before being placed on paid administrative leave. Eggers argues that defendants denied her due process in refusing to allow her to have counsel present before answering any questions regarding the incidents in her classroom and that as a public employee, she has a protected property interest in her continued employment.

Defendants' argument is well-taken. Eggers' confuses her due process rights as a public employee to a hearing prior to a termination or other discipline, such as a

suspension. See Cleveland Board of Educ. v. Loudermill, 470 U.S. 532 (1985). Despite her argument to the contrary, Eggers has not been terminated or been disciplined in any way. When she refused to answer questions, she was not disciplined but rather placed on paid administrative leave and the school district scheduled another meeting so she could have counsel present. This was well within the law based on the circumstances, i.e. a concern for children in her classroom. See id. at 544-45 (stating that when an employer received a significant hazard in keeping the employee on the job, it can avoid the problem by suspending without pay). Eggers, however, informed the school district that she could not attend any meetings due to her medical condition and provided a letter from her doctor stating that she could not work or participate in an investigation. Her status was then changed to medical leave. Indeed, for every school year since 2002, Eggers has provided medical reports indicating that she cannot work and has remained on medical leave. There is nothing in these facts which shows any due process violation. Eggers cites to no persuasive authority to the contrary. This claim must be dismissed.

IV. Eggers' Motion to Amend

Following the parties' briefing on the motion for summary judgment, Eggers filed a motion to amend her complaint to add a claim that "her Fifth Amendment right against self-incrimination is implicated in the facts and circumstances surrounding her being placed on paid administrative leave as a result of the incidents stated in the original complaint."

A. Legal Standard

Under Fed.R.Civ.P. 15(a), a party may amend their pleadings after 20 days "only by leave of court or by written consent of the adverse party; and leave to amend

pleadings "shall be freely given when justice so requires."  The decision whether or not to permit the amendment is committed to the discretion of the trial court.  See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-32 (1971); Estes v. Kentucky Util. Co., 636 F.2d 1131, 1133 (6th Cir. 1980).  This discretion, however, is "limited by Fed.R.Civ.P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits."  See Marks v. Shell Oil Co., 830 F.2d 68, 69 (6th Cir. 1987) (citation omitted).  In determining whether to permit amendment, some of the factors which may be considered by the district court are undue "delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment."  Hageman v. Signal L.P. Gas, Inc. 486 F.2d 479, 484 (6th Cir. 1973).  See also Foman v. Davis, 371 U.S. 178, 182 (1962).  Delay by itself is not sufficient to deny a motion to amend.  Hagerman, 486 F.2d at 484.  See also General Elec. Co. v. Sargent & Lundy 916 F.2d 1119, 1130 (6th Cir. 1990).  Moreover, in denying a motion to amend, a court must find "at least some significant showing of prejudice to the opponent."  Moore v. City of Paducah, 790 F.2d 557, 562 (6th Cir. 1986).

### B.  Analysis

The motion to amend comes too late in the day.  Moreover, it is difficult to understand why Eggers wants to add a Fifth Amendment claim since it does not apply to this civil action.  Indeed, Eggers has not been criminally charged with anything.  Moreover, defendants had a right to question her regarding the incidents in her classroom.  The motion must be denied.

V.  Conclusion

For the reasons stated above, defendants' motion for summary judgment is GRANTED.  Eggers' motion to amend is DENIED.

SO ORDERED.

                                                s/Avern Cohn
                                               AVERN COHN
                                               UNITED STATES DISTRICT JUDGE

Dated:  August 15, 2006

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, August 15, 2006, by electronic and/or ordinary mail.

                                                s/Julie Owens
                                               Case Manager, (313) 234-5160